# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### (ATLANTA DIVISION)

_____
                              )

IN RE CBEYOND, INC.          )      Civil Action No. 1:08-cv-1666 (CC)

SECURITIES LITIGATION    )

_____)


# LEAD PLAINTIFFS' MEMORANDUM OF LAW
# IN SUPPORT OF THEIR UNOPPOSED MOTION FOR FINAL APPROVAL OF
# THE PROPOSED SETTLEMENT AND PLAN OF ALLOCATION AND
# <u>CERTIFICATION OF A SETTLEMENT CLASS</u>


LABATON SUCHAROW LLP
140 Broadway
New York, NY  10005
Tel: (212) 907-0700
Fax: (212) 818-0477

*Lead Counsel for Lead Plaintiffs
and the Class*

PAGE PERRY LLC
1040 Crown Pointe Parkway Ste 1050
Atlanta, GA  30338
Tel: (770) 673-0047
Fax: (770) 673-0120

*Liaison Counsel for Lead Plaintiffs
and the Class*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................... iii

PRELIMINARY STATEMENT ...........................................................1

DESCRIPTION OF THE LITIGATION...................................................2

THE PROPOSED SETTLEMENT ........................................................4

PRELIMINARY APPROVAL AND NOTICE PROGRAM....................................5

ARGUMENT .........................................................................8

I.  THE STANDARDS FOR JUDICIAL APPROVAL OF CLASS
    ACTION SETTLEMENTS .........................................................8

II. THE SETTLEMENT IS FAIR, ADEQUATE AND
    REASONABLE, AND NOT THE PRODUCT OF COLLUSION ..............10

    A.  The Settlement Is the Result of Good Faith, Arm's-Length
        Negotiations Conducted by Informed and Experienced
        Counsel ...............................................................10

    B.  Under Each and Every *Bennett* Factor, the Settlement Is
        Fair, Adequate and Reasonable..........................................12

        1.  Plaintiffs Face Potential Obstacles to Success at Trial.............13

        2.  Considering the Range of Possible Recovery, the
            Settlement Amount Is Within the Range of
            Reasonableness .......................................................17

        3.  Continued Litigation Is Likely to be Complex, Expensive
            and of Long Duration.................................................18

        4.  No Class Member Has Filed an Objection ..............................20

        5.  The Stage of Proceedings at Which Settlement Was
            Achieved .............................................................21

III.   THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS.............23

    A.   Standards Applicable to Class Certification .......................................23

    B.   The Settlement Class Meets the Requirements of Rule 23(a) ............24

        1.   Rule 23(a)(1): The Settlement Class Is so Numerous That
             Joinder of All Members Is Impracticable .................................24

        2.   Rule 23(a)(2): Questions of Law or Fact Are Common to
             the Class ...................................................................................25

        3.   Rule 23(a)(3): Lead Plaintiffs' Claims Are Typical of the
             Claims of Other Class Members................................................26

        4.   Rule 23(a)(4): The Lead Plaintiffs Will Adequately
             Protect the Interests of the Settlement Class............................27

    C.   The Settlement Class Meets the Requirements of Rule
         23(b)(3)..............................................................................................28

        1.   Questions of Law or Fact Common to the Settlement
             Class Predominate Over Any Questions Affecting Only
             Individual Members .................................................................28

        2.   A Class Action Is Superior to Other Available Methods
             for the Fair and Efficient Adjudication of the
             Controversy ..............................................................................31

    D.   Lead Counsel Should Be Appointed  Class Counsel Under
         Rule 23(g)..........................................................................................32

IV.   THE COURT SHOULD APPROVE THE PLAN OF
      ALLOCATION.............................................................................................34

CONCLUSION ......................................................................................................36

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Access Now, Inc. v. Claire's Stores, Inc.*, No. 00-14017-cv,
2002 WL 1162422 (S.D. Fla. May 7, 2002)……………………………21

*Affiliated Ute Citizens v. United States*,
406 U.S. 128 (1972) ...............................................................................31

*Amchem Products v. Windsor*,
521 U.S. 591 (1997) ...............................................................................28

*In re Amerifirst Securities Litigation*,
139 F.R.D. 423 (S.D. Fla. 1991) ............................................................30

*Association for Disabled Americas, Inc. v. Amoco Oil Co.*,
211 F.R.D. 457 (S.D. Fla. 2002) ..............................................................8

*Basic Inc. v. Levinson*,
485 U.S. 224 (1988) ...............................................................................30

*Beavers v. America Cast Iron Pipe Co.*,
164 F.Supp.2d 1290 (N.D. Ala. 2001) ..............................................13, 17

*Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534 (S.D. Fla. 1988),
*aff'd without op.*, 899 F.2d 21 (11th Cir. 1990)...................................9, 17

*Bennett v. Behring Corp.*,
737 F.2d 982 (11th Cir. 1984).........................................................8, 9, 13

*Borcea v. Carnival Corp.*,
238 F.R.D. 664 (S.D. Fla. 2006) ............................................................19

*CV Reit, Inc. v. Levy*,
144 F.R.D. 690 (S.D. Fla. 1992) ............................................................30

*Cammer v. Bloom*,
711 F.Supp. 1264 (D.N.J. 1989)..............................................................31

iii

*Caridad v. Metropolitan-North Commuter R.R.*,
  191 F.3d 293 (2d Cir. 1993) ....................................................26

*Carnegie v. Mutual Savings Life Insurance Co.*, No. cv-99S329NE, 2004
  WL 3715446 (N.D. Ala. Nov. 23, 2004)..................................12

*In re Chicken Antirust Litigation America Poultry*,
  669 F.2d 228 (5th Cir. 1982) ....................................................35

*Cooper v. Pacific Life Insurance Co.*,
  229 F.R.D. 245 (S.D. Ga. 2005).........................................25, 26

*In re Corrugated Container Antitrust Litigation*,
  643 F.2d 195 (5th Cir. 1981)..............................................11, 21

*Cotton v. Hinton*,
  559 F.2d 1326 (5th Cir. 1977)...............................8, 10, 11, 20

*Cox v. American Cast Iron Pipe Co.*,
  784 F.2d 1546 (11th Cir. 1986)................................................25

*Cromer Finance Ltd. v. Berger*,
  205 F.R.D. 113 (S.D.N.Y. 2001)..............................................31

*In re Elan Securities Litigation*,
  385 F.Supp.2d 363 (S.D.N.Y. 2005).......................................22

*Figueroa v. Sharper Image Corp.*,
  517 F.Supp.2d 1292 (S.D. Fla. 2007).......................................17

*Garst v. The Franklin Life Insurance Co.*, Case No. 97-C-0074-S, 1999
  U.S. Dist. LEXIS 22666 (N.D. Ala. June 25, 1999) .........................passim

*In re Global Crossing Securities & ERISA Litigation*,
  225 F.R.D. 436 (S.D.N.Y. 2004).............................................35

*Harris v. Ivax Corp.*,
  182 F.3d 799 (11th Cir. 1999)..................................................15

*In re HealthSouth Corp. Securities Litigation*,
    213 F.R.D. 447 (N.D. Ala. 2003) ................................................24, 25, 26

*Hicks v. Morgan Stanley & Co.*, No. 01-cv-10071 (RJH),
    2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ..........................................19

*Hill v. Art Rice Realty Co.*, 66 F.R.D. 449 (N.D. Ala. 1974), *aff'd without op.*, 511 F.2d 1400 (5th Cir. 1975)............................................................20

*In re Gulf Oil/Cities Service Tender Offer Litigation*,
    142 F.R.D. 588 (S.D.N.Y. 1992).............................................................35

*In re Initial Public Offering Securities Litigation*,
    226 F.R.D. 186 (S,.D.N.Y. 2005).............................................................12

*Kirkpatrick v. J.C. Bradford & Co.*,
    827 F.2d 718 (11th Cir. 1987)......................................................23, 27, 31

*Lagrasta v. First Union Securities, Inc.*, No. 01-cv-251,
    2005 WL 1875469(M.D. Fla. Aug. 8, 2005)...........................................24

*Mashburn v. National Healthcare, Inc.*,
    684 F.Supp. 660 (M.D. Ala. 1988)......................................................8, 12

*In re Miller Industrial Securities Litigation*,
    186 F.R.D. 680 (N.D. Ga. 1999) ............................................................29

*Morris v. Transouth Finance Corp.*,
    175 F.R.D. 694 (M.D. Ala. 1997) ...........................................................32

*Newby v. Enron Corp.*,
    394 F.3d 296 (5th Cir. 2004) ..................................................................22

*In re Oxford Health Plans, Inc. Securities Litigation*,
    191 F.R.D. 369 (S.D.N.Y. 2000).............................................................29

*Perez v. Asurion Corp.*,
    501 F.Supp.2d 1360 (S.D. Fla. 2007).....................................................13

*In re Premiere Technologies Inc., Securities Litigation*,  No. 98-cv-1804 (JOF), 2000 WL 33231639 (N.D. Ga. Dec. 8, 2000) .............................15

*In re Prudential Insurance Co. America Sales Practices Litigation*, 148 F.3d 283 (3d Cir. 1998) ...........................................................................19

*Reina v. Tropical Sportswear International*, No. 03-cv-1958 -T- 23TGW, 2005 WL 846170 (M.D. Fla. Apr. 4, 2005) ...........................................16

*Ressler v. Jacobson*, 822 F. Supp. 1551 (M.D. Fla. 1992) ........................................................20

*In re Smith*, 926 F.2d 1027 (11th Cir. 1991) ...........................................................9, 10

*Strube v. America Equity Investment Life Insurance Co.*, 226 F.R.D. 688 (M.D. Fla. 2005) ....................................................8, 10, 13

*In re Sunbeam Securities Litigation*, 176 F.Supp.2d 1323 (S.D. Fla. 2001)................................................13, 21

*Teamsters Local 445 Freight Division Pension Fund v. Bombadier, Inc.*, No. 05-cv-1898 (SAS), 2006 WL 2161887 (S.D.N.Y. Aug. 1, 2006)........................................................................30

*In re Telik, Inc. Securities Litigation*, No. 07-cv-4819 (CM), 2008 WL 4198516 (S.D.N.Y. Sept. 10, 2008) ........................................32

*In re United States Oil & Gas Litigation*, 967 F.2d 489 (11th Cir. 1992) .........................................................8, 9, 18

*Valley Drug Co. v. Geneva  Pharmaceuticals Inc*, 350 F.3d 1181 (11 Cir. 2003) ...................................................................23

*In re VisaCheck /MasterMoney Antitrust Litigation*, 280 F.3d 124 (2d Cir. 2001) ...................................................................29

*Warren v. City of Tampa*, 693 F. Supp. 1051 (M.D. Fla. 1988) .........................................................9

*In re World Access, Inc. Securities Litigation*,
119 F.Supp.2d 1348 (N.D. Ga. 2000) ........................................................16

*In re WorldCom, Inc. Securities Litigation*,
219 F.R.D. 267 (S.D.N.Y. 2003)..............................................................26

## Statutes

15 U.S.C. §78-5(c)...................................................................................15

28 U.S.C. § 1715.....................................................................................7

Fed. R. Civ. P. 23..............................................................................1, 23

Fed. R. Civ. P. 23(a) ...............................................................................25

Fed. R. Civ. P. 23(b) ...............................................................................28

Fed. R. Civ. P. 23(g) ...............................................................................32

Fed. R. Civ. P. 23(g)(1) ...........................................................................33

## Other Authorities

4 Alba Conte, Herbert B. Newberg, *Newberg on Class Actions* §11.51
(4th ed. 2008).......................................................................................10

Stephanie Plancich & Svetlana Starykh, "*2008 Trends in Securities Class
Actions*" (NERA 2008) ...........................................................................18

## PRELIMINARY STATEMENT

The Genesee County Employees' Retirement System and the Essex Regional

Retirement Board (collectively, "Lead Plaintiffs"), through their counsel Labaton

Sucharow LLP ("Lead Counsel") and Page Perry LLC ("Liaison Counsel"), submit

this memorandum of law, on behalf of themselves and the class, in support of their

unopposed motion, pursuant to Fed. R. Civ. P. 23(a), (b)(3) and (e), for:

> (1) final approval of the proposed settlement of claims against
> Defendants Cbeyond, Inc. ("Cbeyond"), James F. Geiger and J. Robert
> Fugate (collectively, "Defendants") in this class action, as set forth in the
> Stipulation and Agreement of Settlement, dated as of August 28, 2009
> (the "Stipulation"), for $2.3 million;

> (2) certification of a settlement class consisting of all persons and entities
> that purchased or acquired the common stock of Cbeyond during the
> period from November 1, 2007 through February 21, 2008, inclusive (the
> "Class Period") and were damaged thereby (the "Settlement Class") and
> appointment of the Lead Plaintiffs as Class Representatives and Counsel
> as Class Counsel for the Settlement Class; and

> (3) approval of the proposed plan for the allocation of the net proceeds of
> the Settlement (the "Plan of Allocation").

Lead Plaintiffs and Lead Counsel submit that the $2.3 million proposed

settlement (the "Settlement") with Defendants is a very favorable result for the

Settlement Class, both quantitatively and when considering the risk of no recovery.

According to estimates by Lead Plaintiffs' consulting damages expert, the Settlement

would recover almost 5% of alleged damages arising from several stock drops. To put

this number into perspective, median recoveries in other securities class actions during

the past five years have ranged from 2.2% to 3.2% according to analyses by NERA

Economic Consulting.  (*See* Declaration of Mark S. Goldman ("Goldman Decl."),

dated December 28, 2009, Exhibit 3 at page 14, submitted herewith.)

## DESCRIPTION OF THE LITIGATION

Currently pending before the Court is a consolidated class action on behalf of

all persons who, between November 1, 2007 and February 21, 2008, purchased or

otherwise acquired the common stock of Cbeyond (the "Securities Litigation").

The operative complaint in the Litigation is the Consolidated Amended

Complaint (the "Amended Complaint") filed by Lead Plaintiffs on October 24, 2008.

The Amended Complaint alleges, among other things, that Defendants violated

Sections §10(a)-(c) of the Securities Exchange Act of 1934 by issuing false and

misleading statements to investors during the Class Period.  The statements allegedly

contained misrepresentations and omissions concerning Cbeyond's "customer churn

rates," a metric that compared the number of customers Cbeyond lost in a given

period of time to its total customers, and its financial results.  The Amended

Complaint also alleged that the Individual Defendants were "control persons" and

were liable under Section 20(a) of the Exchange Act.  The Amended Complaint

further alleged that Lead Plaintiffs and other Class Members purchased Cbeyond

common stock during the Class Period at artificially inflated prices and were allegedly

2

damaged when the truth about Cbeyond's business was disclosed and the stock price dropped on multiple occasions.

On December 23, 2008, Defendants filed an extensive motion to dismiss the Amended Complaint in its entirety on the grounds that the complaint (1) failed to state a claim and (2) failed to plead materiality, falsity and scienter with the requisite particularity. Lead Plaintiffs vigorously opposed the motion and filed substantial opposition papers on February 20, 2009.

The Settlement follows an extensive investigation that included, among other things:

- review and analysis of publicly available information concerning Defendants, including newspaper articles, online publications, stock price movement, statements at analyst conferences and Bloomberg reports;

- review and analysis of regulatory filings made by Defendants with the United States Securities and Exchange Commission ("SEC");

- review and analysis of securities analyst reports;

- review and analysis of press releases and media reports issued by and disseminated by Defendants; and

- interviews with more than 15 individuals with information about Cbeyond, including former employees and a former Citigroup securities analyst, five of whom became confidential witnesses.

Lead Plaintiffs have also consulted with a damages expert throughout the prosecution of the case. Formal discovery was stayed during the pendency of Defendants' motion to dismiss, pursuant to the Private Securities Litigation Reform Act ("PSLRA").

## THE PROPOSED SETTLEMENT

The Settlement was reached after an extensive pre-trial investigation, briefing of a challenging motion to dismiss and arm's-length and good faith negotiations to enter into the Settlement.  Several settlement discussions took place, including before an experienced impartial mediator, the Hon. Nicholas Politan (Ret.), a former judge of the United States District Court for the District of New Jersey.  These discussions ultimately led to the Parties agreeing to settle the Securities Litigation and signing the Stipulation.  With the benefit of a thorough informal investigation and full legal analyses of the claims and defenses of the Parties, Lead Plaintiffs and Lead Counsel have concluded that the Settlement is in all respects fair, adequate, reasonable and in the best interests of the Settlement Class.

The Settlement has been funded by a payment of $2.3 million to the Settlement Class into an interest bearing escrow account.  In exchange for this payment, upon the Effective Date of Settlement, as defined in the Stipulation, the Lead Plaintiffs and the Settlement Class will release all Released Claims against the Released Defendant Parties.[1]

--------

[1]  In addition, the proposed judgment contains a bar order that would preclude all claims seeking contribution or indemnity arising out of the Released Claims and a judgment credit, pursuant to the PSLRA.

## PRELIMINARY APPROVAL AND NOTICE PROGRAM

In its Preliminarily Approval Order Providing for Notice and Hearing in Connection with Proposed Class Action Settlement ("Preliminary Approval Order"), dated September 17, 2009, this Court preliminarily approved the Settlement and also approved the Notice of Pendency of Class Action and Proposed Settlement ("Notice"), the Proof of Claim and Release form ("Proof of Claim") and Summary Notice of Pendency of Class Action and Hearing on Proposed Settlement ("Summary Notice") for dissemination to the Settlement Class.  Copies of the printed Notice, Summary Notice and Proof of Claim are attached as Exhibits A and B to the Affidavit of Eric Schachter, dated December 23, 2009. ("Schachter Aff.")  (Goldman Decl. Ex. 2-A and 2-B)[2]  The Court also approved A.B. Data, Ltd ("A.B. Data") as the Claims Administrator of the Settlement and set a hearing for January 5, 2010 (the "Settlement Hearing") to consider the fairness, reasonableness and adequacy of the Settlement and the Plan of Allocation.  (Goldman Decl. Ex. 1.)

In compliance with the Preliminary Approval Order and under the supervision of Lead Counsel, A.B. Data mailed copies of the Notice to all potential members of the Settlement Class who could be identified with reasonable effort and

---

[2] For clarity, throughout Lead Plaintiffs' submissions in connection with the Settlement, citations to exhibits, which themselves have attached exhibits, will be referenced as "Ex. __ - __."  The first numerical reference refers to the designation of the entire exhibit attached to the Goldman Decl. and the second reference refers to the internal exhibit designation.

brokers/nominees who may have purchased Cbeyond common stock for the beneficial interest of investors.  (Goldman Decl. Ex. 2 ¶¶ 8-9.)  To date, A.B. Data has mailed the Notice to more than 13,376 potential Settlement Class Members and brokers/nominees.  *Id.* ¶ 9.

In addition, the Summary Notice was published in *Investors Business Daily* and transmitted over *Business Newswire* on October 1, 2009.  *Id.* ¶¶ 11-12.  The Notice and Proof of Claim form were also posted on the websites for Lead Counsel and A.B. Data for easy downloading by interested investors.  (Goldman Decl. ¶ 12.)  A.B. Data also set-up and maintained a toll-free telephone number that interested investors could call for assistance.  *Id.* ¶ 15.

The Notice described, *inter alia*, the claims asserted in the Litigation, the contentions of the settling parties, the course of litigation, the terms of the Settlement with Cbeyond, the Plan of Allocation, the date of the Settlement Hearing, the right to object to the Settlement, the right to seek to be excluded from the Settlement Class and the procedures and deadlines for submitting a claim to share in the proceeds of the Settlement.  The deadline for objecting or seeking exclusion was December 22, 2009.

To date, in response to this outreach effort, there have been no objections and only one request for exclusion from an entity that has not established that it is a class member.  (Goldman Decl. ¶ 53.)

Furthermore, pursuant to 28 U.S.C. § 1715, the Class Action Fairness Act of 2005, Defendants served notice of the proposed Settlement on the United States Attorney General and the Attorney General of each state which the records of Cbeyond's transfer agent indicated as the domicile of a registered shareholder as of September 15, 2009.   Specifically, each Attorney General received copies of the original Class Action Complaint, Amended Complaint, Preliminary Approval Order, Notice, Proof of Claim, Summary Notice, and Stipulation.  None of the Attorneys General objected to the Settlement.

The Notice also advised Class Members of Lead Counsel's intention to seek an award of attorneys' fees that would not exceed 30% of the gross settlement fund ("Settlement Fund"), plus accrued interest, and reimbursement of litigation expenses not to exceed $55,000.00, plus accrued interest.

In light of the benefits achieved by the Settlement and the opportunity for an immediate cash recovery for thousands of Class Members, Lead Plaintiffs respectfully ask this Court to: (1) enter the proposed Judgment; (2) finally certify the proposed Settlement Class; and (3) enter the proposed Order Approving Plan of Allocation, also submitted herewith.

## ARGUMENT

**I.  THE STANDARDS FOR JUDICIAL APPROVAL
     OF CLASS ACTION SETTLEMENTS**

There is a "strong judicial policy favoring settlement."  *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984); *accord Strube v. Am. Equity Inv. Life Ins. Co.*, 226 F.R.D. 688, 698 (M.D. Fla. 2005).  "Particularly in class action suits, there is an overriding public interest in favor of settlement."  *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977); *accord In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992); *Ass'n for Disabled Ams., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002).  Moreover, the policy in favor of class action settlements applies specifically to class actions alleging securities fraud.  *See Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 660, 667 (M.D. Ala. 1988) (holding "securities fraud class actions readily lend themselves to settlement") (internal citations omitted).  As the Eleventh Circuit noted in *U.S. Oil & Gas*:

> Complex litigation – like the instant [class action] case – can occupy a court's docket for years on end, depleting the resources of the parties and the taxpayers while rendering meaningful relief increasingly elusive.  Accordingly, the Federal Rules of Civil Procedure authorize district courts to facilitate settlements  . . .

967 F.2d at 493.

To finally approve a class action settlement pursuant to Rule 23(e), "the district court must find that it 'is fair, adequate and reasonable and is not the product of collusion between the parties.'"  *Bennett*, 737 F.2d at 986 (internal citation omitted).

8

Within the Eleventh Circuit, whether a proposed settlement is "fair, adequate and reasonable" is determined by consideration of the following factors:

> (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense, and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.

*Id.* (internal citation omitted).   *See also Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 537 (S.D. Fla. 1988) (internal citation omitted) (applying the *Bennett* factors), *aff'd without op.*, 899 F.2d 21 (11th Cir. 1990).  The application of the *Bennett* factors is left to the discretion of the trial judge and appellate review of the court's decision with respect to settlement approval is under an abuse of discretion standard.  *See In re United States Oil & Gas Litig.*, 967 F.2d at 493.

In evaluating a settlement, it is proper for the trial court to rely on the judgment of experienced counsel for the parties in the case at issue.  *See In re Smith*, 926 F.2d 1027, 1028 (11th Cir. 1991); *see also Warren v. City of Tampa*, 693 F. Supp. 1051, 1060 (M.D. Fla. 1988) (in approving settlement of class action, "[t]he court is affording great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation").  Indeed, in reviewing a settlement under Rule 23, "the trial judge, absent fraud, collusion, or the like, should be hesitant

to substitute its own judgment for that of counsel." *Cotton*, 559 F.2d at 1330; *accord In re Smith*, 926 F.2d at 1028; *Strube*, 226 F.R.D. at 703.

Also important to the Court's consideration of the Settlement is the fact that Lead Plaintiffs are large institutions that have been involved in every aspect of the proceedings. The involvement of Lead Plaintiffs is significant and they have thoroughly evaluated the issues on behalf of the class. [(Goldman Decl. ¶ 34, 45.)]

As shown below, judged by these standards, the proposed Settlement warrants the Court's approval.

## II.    THE SETTLEMENT IS FAIR, ADEQUATE AND REASONABLE, AND NOT THE PRODUCT OF COLLUSION

### A.    The Settlement Is the Result of Good Faith, Arm's-Length Negotiations Conducted by Informed and Experienced Counsel

"[Courts] presume the absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered." 4 Alba Conte, Herbert B. Newberg, *Newberg on Class Actions* §11.51, at 158 (4th ed. 2008).

Here, no claim of fraud or collusion in the negotiation of this Settlement could be credibly asserted. To the contrary, the record affirmatively shows that the Settlement is the product of good faith, extensive arm's-length negotiations conducted by well-informed and highly experienced counsel. (Goldman Decl. ¶¶ 32-34.)

First, Lead Counsel has extensive experience in securities class action litigation and has tenaciously prosecuted the claims against Cbeyond. Indeed, Lead Counsel

has decades of experience successfully prosecuting shareholder class actions and has

been the subject of praise from numerous courts around the country.  For example,

these same counsel have been responsible for the settlements achieved in, among

others, *In re HealthSouth Corp. Sec. Litig*., *In re El Paso Corporation Securities*

*Litigation*, *In re General Motors Corp. Securities Litigation* and *In re Waste*

*Management, Inc. Securities Litigation*. (Goldman Decl. Ex. 4-A.)  *See Cotton*, 559

F.2d at 1330 ("the trial court is entitled to rely upon the judgment of experienced

counsel for the parties.  Indeed, the trial judge, absent fraud, collusion, or the like,

should be hesitant to substitute its own judgment for that of counsel"); *Garst v. The*

*Franklin Life Ins. Co*., Case No. 97-C-0074-S, 1999 U.S. Dist. LEXIS 22666, at *80

(N.D. Ala. June 25, 1999) (following "[n]umerous courts" that had given plaintiffs'

counsel's opinion "substantial weight in approving other similar settlements," because

of such counsel's "experience and expertise").

Second, as discussed in the Goldman Declaration, Lead Counsel is fully

informed about the strengths and weaknesses of the claims against Defendants.

Although the Settlement was reached relatively early, it was only reached after a

thorough assessment of the facts and merits of the legal claims and defenses.

"[F]ormal discovery [is not] a necessary ticket to the bargaining table," *In re*

*Corrugated Container Antitrust Litig*., 643 F.2d 195, 211 (5th Cir. 1981), and courts

have rejected the notion that such discovery must take place. *See*, *e.g., Cotton*, 559

F.2d at 1332 (The fact that "very little formal discovery was conducted and that there is no voluminous record in this case . . . does not compel the conclusion that insufficient discovery was conducted."); *Mashburn v. Nat'l Healthcare, Inc*., 684 F. Supp. at 669 (early settlements are to be encouraged, and accordingly, only some reasonable amount of discovery is required to determine the fairness of settlement).

Third, *all* the settlement negotiations were conducted at arm's length through experienced counsel after consultation with an impartial and independent mediator, Hon. Nicholas Politan, a retired federal district court judge of the United States District Court for the District of New Jersey. (Goldman Decl. ¶¶ 32-34.)  The use of this mediator indicates that the Settlement was the result of good faith arm's-length negotiations.  *See Carnegie v. Mutual Sav. Life Ins. Co*., No. CV-99S329NE, 2004 WL 3715446, at *18 (N.D. Ala. Nov. 23, 2004) (approving settlement where, among other circumstances, the settlement process was supervised by an experienced mediator); *In re Initial Pub. Offering Sec. Litig*., 226 F.R.D. 186, 194 & n.42 (S.D.N.Y. 2005) (where negotiations were facilitated by former judge, settlement was "clearly the result of arm's-length bargaining").

### B.   Under Each and Every *Bennett* Factor, the Settlement Is Fair, Adequate and Reasonable

In deciding whether a proposed settlement is "fair, adequate and reasonable," courts within the Eleventh Circuit consider each of the following *Bennett* factors:

(1) the likelihood of success at trial; (2) the range of possible recovery;

12

(3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense, and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.

*Bennett,* 737 F.2d at 986. Under each of these factors, the proposed Settlement is fair, adequate and reasonable.

### 1. Plaintiffs Face Potential Obstacles to Success at Trial

"In assessing plaintiffs' likelihood of success at trial for purposes of determining whether the Settlement is fair, adequate, and reasonable, the court should make only a 'limited inquiry into whether the possible rewards of continued litigation with its risks and costs are outweighed by the benefits of the settlement.'" *Garst*, 1999 U.S. Dist. LEXIS 22666, at *62 (citation omitted); *accord Strube*, 226 F.R.D. at 697-98; *Beavers v. Am. Cast Iron Pipe Co.*, 164 F. Supp. 2d 1290, 1298 (N.D. Ala. 2001). "Where a substantial question exists regarding the likelihood of success at trial, this factor weighs in favor of approving a proposed class action settlement." *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1380 (S.D. Fla. 2007), quoting *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1330-31 (S.D. Fla. 2001).

After reviewing and analyzing publicly available information, the regulatory filings made by Defendants with the SEC, securities analyst reports, press releases and media reports issued and disseminated by Defendants, conducting interviews with 15 former employees of Cbeyond and a securities analyst over the span of three months (some of whom became confidential witnesses) and thorough assessment of analyses

13

by a consulting damages expert, Lead Plaintiffs believe that they have developed significant evidence to help them succeed at trial against Defendants, but realize that in addition to the risks that are always inherent in a complex securities fraud case, there are risks particular to pursuing the claims against Defendants to trial here.

The general risks of complex securities litigations include, for example, the possibility that the claims would be dismissed pursuant to the motion to dismiss, for failure to satisfy the pleading standards of the PSLRA, or through a motion for summary judgment after the completion of fact and expert discovery. Lead Plaintiffs might fail to prove their claims at trial and the size of the damages actually awarded might be considerably less, (or zero) than those claimed.

In this particular case, there are numerous issues on which the Parties would likely disagree, including: (a) the extent to which external factors, such as general market conditions, influenced the trading price of Cbeyond common stock during the Class Period; (b) the extent to which Defendants' allegedly false or misleading statements influenced (if at all) the trading price of Cbeyond common stock; (c) the appropriate economic model for determining the amount by which the trading prices of Cbeyond stock were allegedly artificially inflated (if at all); and (d) whether plaintiffs could establish that Defendants acted with the requisite intent to defraud.

Furthermore, as they argued in their motion to dismiss, Defendants would have challenged the actionability of the alleged misstatements—characterizing the

Litigation as a mere "projections" case. Defendants maintained that certain statements are protected by the PSLRA's provisions governing forward-looking statements both because of the nature of the information in the statements and the lack of proof that Defendants made the statements with knowledge of their false or misleading nature. 15 U.S.C. §78-5(c)(1); *see also Harris v. Ivax Corp.* 182 F.3d 799, 803, 806-807 (11th Cir. 1999) (defendants "may avoid liability for forward-looking statements that prove false if the statement is 'accompanied by meaningful cautionary statements'"). They also argued that many of the alleged statements were either true at the time they were made or inactionable puffery.

Lead Plaintiffs argued, and would have continued to maintain, that the alleged misstatements were of historical or current "hard" facts and therefore not protected as forward-looking. *See, e.g., In re Premiere Techs., Inc., Sec. Litig.*, No. 98-CV-1804 (JOF), 2000 WL 33231639, at *17 (N.D. Ga. Dec. 8, 2000) ("the statutory safe harbor does not preclude liability" for "statements or omissions of historical or 'hard' facts about current or past conditions"). Lead Plaintiffs would state that even if certain statements were forward-looking, (1) they were not accompanied by adequate cautionary language and (2) information provided by confidential witnesses showed that they were made by Defendants with the knowledge that they were false, this removing them from protection. *See, e.g., In re World Access, Inc. Sec. Litig.*, 119 F. Supp. 2d 1348, 1357 (N.D. Ga. 2000); *Reina v. Tropical Sportswear Intl*, No. 03-CV-

1958 -T- 23TGW, 2005 WL 846170 (M.D. Fla. Apr. 4, 2005).  Lead Plaintiffs also would argue that the alleged misstatements were indeed false at the time they were made.  However, there was a real risk that the Court, and later on the trier-of-fact, would construe the statements as being projections and therefore inactionable.

Defendants also disputed that Lead Plaintiffs had pled, and would continue to dispute that they could prove, the requisite state of mind for each of the Defendants. They raised the fact that none of the individual defendants sold any of their Cbeyond stock during the Class Period and challenged the reliability of statements made by Lead Plaintiffs' five confidential witnesses: a former operations director, two sales associates, a sales "team leader" and a Citigroup analyst.  Lead Plaintiffs believed they had a strong case supporting each of the Defendants' scienter, but without the Settlement there remained a real risk that this Court could reject the allegations of the confidential witnesses and find the pleading of scienter lacking or that a jury could agree that the individuals involved did not intentionally, or with severe recklessness, mislead investors and that, instead, unknown negative factors caused Cbeyond's poor performance.

As was held in *Garst*, "[t]he existence of these (and other) potential obstacles to plaintiffs' success on the merits argues in favor of approving the settlement." 1999 U.S. Dist. LEXIS 22666, at *64; *see Beavers*, 164 F. Supp. 2d at 1298 ("there are both

strengths and weaknesses in each party's position[;] [t]his uncertainty of outcome is another factor favoring approval of the settlement").

The first *Bennett* factor strongly favors approval of the Settlement.

### 2. Considering the Range of Possible Recovery, the Settlement Amount Is Within the Range of Reasonableness

"The second and third factors in the Eleventh Circuit's *Bennett* analysis call for the court to determine 'the possible range of recovery' and then ascertain where within that range 'fair, adequate, and reasonable settlements lie.'" *Garst*, 1999 U.S. Dist. LEXIS 22666, at *64 (citations omitted).  It has been noted that these two Bennett factors "are generally analyzed together."  *Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292, 1326 (S.D. Fla. 2007) (citing *Behrens*, 118 F.R.D. at 541).   In deciding what range of settlement is fair, adequate, and reasonable, the court determines "whether [the settlement amount] falls within the 'range of reasonableness,' not whether it is the most favorable possible result in the litigation." *Garst*, 1999 U.S. Dist. LEXIS 22666, at *68.

Here, these factors also weigh in favor of approving the Settlement.  The $2.3 million Settlement is a very favorable recovery that falls well within the range of reasonableness when considering similar settlements and all the risks of proceeding with the claims against Defendants.

According to estimates by Lead Plaintiffs' consulting damages expert, the Settlement would recover almost 5% of alleged damages arising from several stock drops. The Settlement will be comprised of cash, which has been earning interest since the Settlement was funded. A recent study by NERA Economic Consulting, a firm that frequently provides damages expertise to defendants in securities fraud cases, reported that over the past 5 years, from 2004 to 2008, the median ratio of settlements to investor losses ranged from a low of 2.2% in 2006 to a high of 3.2% in 2005. *See* Stephanie Plancich & Svetlana Starykh, *2008 Trends in Securities Class Actions*, (NERA Dec. 2008) (Goldman Decl., Exhibit 3, page 14.). The Settlement here would recover much more for the Settlement Class.

Viewed in light of the significant risks discussed above and in the Goldman Decl. ¶¶ 45-52, and compared to the size of median securities class action settlements, the Settlement represents a favorable result for the Settlement Class. The second and third *Bennett* factors weigh in favor of approval.

### 3. Continued Litigation Is Likely to be Complex, Expensive and of Long Duration

This litigation and the claims against Defendants have been challenging and vigorously prosecuted and defended. (*See generally* Goldman Decl. ¶¶24-30.) In noting that "[p]ublic policy strongly favors the pretrial settlement of class action lawsuits," the Eleventh Circuit cited the conservation of judicial and other resources as the policy's rationale. *In re U.S. Oil & Gas Litig*., 967 F.2d at 493; *see also,*

18

*Borcea v. Carnival Corp.*, 238 F.R.D. 664, 671 (S.D. Fla. 2006).  Without the Settlement, the prosecution of the claims against Defendants would require extensive judicial resources, hotly contested fact and expert discovery, the inevitable *Daubert* motions, summary judgment briefing and, of course, trial preparation and a trial, which would likely last for more than three weeks.

These efforts would also require additional large time and financial expenditures over an extended period, after which the Settlement Class might obtain a result far less beneficial than the one provided by the Settlement.  *See In re Prudential Ins. Co. Am. Sales Practices Litig.*, 148 F.3d 283, 318 (3d Cir. 1998) (settlement favored where "trial of this class action would be a long, arduous process requiring great expenditures of time and money on behalf of both the parties and the court.").  If this case were to proceed to trial, the jury would have to assimilate intricate facts in order to understand the nexus between Defendants' conduct, the alleged securities laws violations and the class's injury.  Accordingly, a favorable outcome for the Settlement Class is far from assured.

Moreover, in light of the vigorously contested nature of the Defendants' motions, a judgment favorable to the Settlement Class would undoubtedly have been the subject of post-trial motions and appeals.  By contrast, the Settlement offers the certainty of a more prompt payment from the fund established by Settlement.  *See Hicks v. Morgan Stanley & Co.*, No. 01-CV-10071 (RJH), 2005 WL 2757792, at *6

19

(S.D.N.Y. Oct. 24, 2005) ("Further litigation would necessarily involve further costs [and] justice may best be served with a fair settlement today as opposed to an uncertain future settlement or trial of this action."). Accordingly, the fourth *Bennett* factor favors approval.

### 4.    No Class Member Has Filed an Objection

Even if a large number of Settlement Class Members objected, this Settlement is fair and reasonable and in the best interests of the Settlement Class as a whole. "A settlement can be fair notwithstanding a large number of class members who oppose it." *Cotton*, 559 F.2d at 1331. The court-approved notice program was initiated on October 1, 2009. To date, copies of the notice have been sent to over 13,376 potential class members. (Goldman Decl. Ex. 2 ¶ 9.) No objections have been received in the almost three months since the notice program began.

"The fact that there are no objections to the settlement is excellent evidence of the settlement's fairness and adequacy." *Ressler v. Jacobson*, 822 F. Supp. 1551, 1556 (M.D. Fla. 1992); *Hill v. Art Rice Realty Co.*, 66 F.R.D. 449, 456 (N.D. Ala. 1974) (only one objection is compelling evidence that the attitude of the overwhelming percentage of the class affected by the settlement supports the

reasonableness and appropriateness of the settlement), *aff'd without op.*, 511 F.2d 1400 (5th Cir. 1975).[3]

### 5.    The Stage of Proceedings at Which Settlement Was Achieved

In assessing the stage of the proceedings at which settlement was achieved, "the relevant inquiry is whether the parties have conducted sufficient discovery to assess the strengths and weaknesses of their claims and defenses." *Garst*, 1999 U.S. Dist. LEXIS 22666, at *69-70.   In *Sunbeam*, 176 F. Supp. 2d at 1332, because the "case had progressed to a point where each side was well aware of the other side's position and the merits thereof," this weighed heavily in favor of the court finding the proposed settlement to be fair, adequate and reasonable.  Here, Lead Plaintiffs and Lead Counsel were well informed about the strengths and weaknesses of the claims against Defendants.

Although the Settlement was reached relatively early and before formal discovery could be conducted given the PSLRA stay of discovery, an agreement was only reached after a thorough investigation of the facts and merits of the legal claims and defenses.  "[F]ormal discovery [is not] a necessary ticket to the bargaining table," *Corrugated Container*, 643 F.2d at 211, and courts have rejected the notion that such

------

[3] Therefore, "[t]he fact that no objections have been filed strongly favors approval of the settlement." *Access Now, Inc. v. Claire's Stores, Inc.*, No. 00-14017-CV, 2002 WL 1162422, at *7 (S.D. Fla. May 7, 2002); *see Garst*, 1999 U.S. Dist. LEXIS 22666, at *71-72 ("small amount of opposition strongly supports approving the Settlement").

discovery must take place.  *See, e.g., Newby v. Enron Corp.*, 394 F.3d 296, 306 (5th Cir. 2004); *In re Elan Sec. Litig.*, 385 F. Supp. 2d 363, 370 (S.D.N.Y. 2005)(finding that despite little or no formal discovery, class counsel had sufficient information to make an informed judgment based on interviews of former employees, review of documents relating to SEC investigation and consultation with accounting and damages experts.)  A court should focus on whether "Class Counsel had sufficient information to adequately evaluate the merits of the case and weigh the benefits against further litigation," and not the extent to which formal discovery was conducted.  *Francisco v. Numismatic Guaranty Corp.*, No. 06-61677-CV, 2008 WL 649124, at *11 (S.D. Fla., Jan. 31, 2008).

Lead Counsel conducted an extensive investigation of the claims in this action both before and after filing the Amended Complaint.  This investigation included, *inter alia*: (i) review and analysis of publicly available information concerning Defendants, including newspaper articles, online publications, stock price movement, statements at analyst conferences, and Bloomberg reports; (ii) review and analysis of regulatory filings made by Defendants with the SEC; (iii) review and analysis of securities analyst reports; (iv) review and analysis of press releases and media reports issued by and disseminated by Defendants; (v) researching the applicable law with respect to the claims and potential defenses, including opposing Defendants' substantial motion to dismiss; and (vi) interviews with more than 15 individuals

involved with Cbeyond, some of whom became confidential witnesses. The search for potential witnesses took place over three months and investigators sought information from former Cbeyond senior sales executives, sales associates, accountants, as well as a former securities analyst with Citigroup. (Goldman Decl. ¶ 42.) With respect to loss causation and damages issues, analyses concerning the Parties' respective arguments enabled Lead Plaintiffs to carefully assess the value of the claims, including the risks of proving loss causation and damages. Because Lead Plaintiffs' internal damages analysis was based on historical data and the analysis of an experience damages expert, the facts and circumstances underlying loss causation and damages were well-understood and vetted when the Parties agreed to settle. *Id.* at 43.

Lead Plaintiffs' fully informed decision to enter into the Settlement strongly favors approval.

## III.   THE COURT SHOULD CERTIFY THE <u>SETTLEMENT CLASS</u>

### A.     <u>Standards Applicable to Class Certification</u>

A securities suit may be maintained as a class action if all four subsections of Fed. R. Civ. P. 23(a) and at least one of the subsections of Rule 23(b) are satisfied. *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 721 n.2 (11th Cir. 1987). A trial court may consider the merits of the case only to the degree necessary to determine whether the requirements of Rule 23 are satisfied. *See Valley Drug Co. v. Geneva*

*Pharm, Inc,* 350 F.3d 1181, 1188 n.15 (11th Cir. 2003). As such, trial courts are not permitted to "reject class certification based only on its assessment of Plaintiffs' likelihood of success on the claim." *Lagrasta v. First Union Secs., Inc.*, No. 01-CV-251, 2005 WL 1875469, at *2 (M.D. Fla. Aug. 8, 2005).

**B.    The Settlement Class Meets the
Requirements of Rule 23(a)\_\_\_\_**

**1.    Rule 23(a)(1): The Settlement Class Is so Numerous That
Joinder of All Members Is Impracticable**

Rule 23(a)(1) requires that the class be so numerous that joinder of all members is impracticable. "Impracticable does not mean impossible; plaintiffs need only show that it would be extremely difficult or inconvenient to join all members of the class." *In re HealthSouth Corp. Sec. Litig.*, 213 F.R.D. 447, 457 (N.D. Ala. 2003) (internal quotes and citations omitted). In fact, "[c]ourts generally presume that plaintiffs establish numerosity when the claims involved securities traded nationally." *Id.*

Here, there can be no dispute that the putative settlement class satisfies numerosity and consists of (at least) thousands of investors. As of April 21, 2008, Cbeyond had more than 28.7 million shares of common stock outstanding. Cbeyond's common stock was actively traded on NASDAQ National Market System throughout the Settlement Class Period. (*See* Amended Complaint at ¶ 23 (Dkt. # 24.)) Common sense dictates that these shares were purchased by hundreds of thousands of investors, making joinder impracticable. *See HealthSouth*, 213 F.R.D. at 457.

## 2.    Rule 23(a)(2): Questions of Law or Fact Are Common to the Class

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality does not mean that all class members must make identical claims and arguments. *Cox v. Am Cast Iron Pipe Co.*, 784 F.2d 1546, 1557 (11th Cir. 1986). "The threshold for establishing commonality under Rule 23(a)(2) is not onerous—where a common scheme of deception is credibly alleged, Rule 23(a)(2) is met." *Cooper v. Pac. Life Ins. Co.*, 229 F.R.D. 245, 257 (S.D. Ga. 2005).

Common questions of both law and fact abound here. The central questions of whether Defendants' public statements were false or material, whether Defendants acted with the requisite mental state and whether the class relied on Defendants' alleged misstatements and omissions are all the same for each class member. Therefore, the existence and nature of Defendant's alleged liability will be common to all class members, and the claims of each class member arise from the same operative facts and share legal theories. *HealthSouth*, 213 F.R.D. at 458 ("[t]he court concludes that some questions of law or fact are common to the class and, thus, plaintiffs have met the minimum requirement of Fed. R. Civ. P. 23(a)(2)").

### 3.     Rule 23(a)(3): Lead Plaintiffs' Claims Are Typical of the Claims of Other Class Members

Rule 23(a)(3), the typicality requirement, is satisfied when the plaintiff shows that each representatives' claims "arise from the same event or patterns or practice and are based on the same legal theory" as the claims of other class members.  *Cooper*, 229 F.R.D at 258.  Typicality does not require, however, that the situations of the named representative and the class members be identical.  *See HealthSouth*, 213 F.R.D. at 460.  Rather, so long as "the disputed issue of law or fact occup[ies] essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class," *In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 280 (S.D.N.Y. 2003) (quoting *Caridad v. Metro-North Commuter R.R.*, 191 F.3d 293 (2d Cir. 1993)), the typicality requirement is usually met despite minor variations in the fact patterns underlying individual claims.  "The important inquiry is whether the proposed class representatives claims have the same essential characteristics as those of the proposed class."  *HealthSouth*, 213 F.R.D. at 458.

Here, Lead Plaintiffs' claims are identical to those of the other members of the Settlement Class.  They, like all members of the Settlement Class, purchased Cbeyond's common stock at allegedly artificially inflated prices during the Class Period and claim to have suffered damages because of Defendants' alleged material misstatements and omissions.  (*See* Amended Complaint at ¶¶20-22 (Dkt. # 24.))  Accordingly, the legal theories and evidence Lead Plaintiffs will advance to prove

their claims will simultaneously advance the claims of other class members.  The

typicality requirement is met.

>    **4.    Rule 23(a)(4): The Lead Plaintiffs**
>    **Will Adequately Protect the Interests**
>    **of the Settlement Class_____**

Rule 23(a)(4), the adequacy of representation requirement, entails two

showings: (i) class counsel must be qualified, experienced and generally able to

conduct the litigation; and (ii) the representative plaintiff's interests must not be

antagonistic to those of the remainder of the class.  *Kirkpatrick*, 827 F.2d at 726.

First, Labaton Sucharow and Page Perry, LLC, Court-appointed Lead Counsel

and Liaison Counsel, respectively, for Lead Plaintiffs and the proposed class, are

amply qualified, experienced and able to conduct this litigation vigorously and

effectively, and have ably represented Lead Plaintiffs and the proposed Settlement

Class in this litigation.  (*See* Goldman Decl., Exhibits 4 and 5; Section III(D) *infra*.)

Second, there is no genuine conflict or antagonism between the claims of the

proposed class representatives and those of the other members of the proposed

Settlement Class.  Both Lead Plaintiffs are also institutional investors whose

participation is encouraged by the PSLRA.  Genesee County Employees' Retirement

System provides retirement benefits for approximately 3,000 working and retired

public employees of Genesee County, Michigan and manages approximately $462.6

million in assets.  Essex Regional Retirement Board provides retirement benefits for

approximately 5,000 working and retired public employees of Essex County, Massachusetts and manages approximately $213 million in assets. (*See* Amended Complaint at ¶¶ 20-21 (Dkt. # 24.))  They are committed to monitoring Lead Counsel and prosecuting this action vigorously, as indicated by their direct involvement in the litigation to date.

Given that no conflict exists between the Lead Plaintiffs' interests and those of other members of the Settlement Class, and their counsel are able and competent lawyers in this area of practice, the adequacy of representation requirement is met.

### C.  The Settlement Class Meets the Requirements of Rule 23(b)(3)

#### 1.  Questions of Law or Fact Common to the Settlement Class Predominate Over Any Questions Affecting Only Individual Members

Rule 23(b)(3) sets forth two requirements, the first being that the questions of law or fact common to the members of the class must "predominate" over any questions affecting only individual members.  Fed. R. Civ. P. 23(b)(3).  The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem Prods. v. Windsor*, 521 U.S. 591, 623 (1997).  The Supreme Court expressly recognized that "[p]redominance is a test readily met in certain cases alleging . . . securities fraud[.]"  *Id*. at 625.

Lead Plaintiffs need not show that all questions of law or fact are common, but only that some questions are common and that they predominate over individual questions.  *In re Miller Indus. Sec. Litig.*, 186 F.R.D. 680, 688 (N.D. Ga. 1999).

The common questions of law and fact noted above clearly predominate over any conceivable individual question, because Defendants' alleged fraudulent statements and omissions affected all Settlement Class Members in the same manner (*i.e.,* through public statements made to the market and documents publicly filed with the Securities and Exchange Commission).  Generalized proof will be necessary with respect to the issues of whether: (1) Defendants' alleged misstatements and omissions were false and material to Cbeyond investors; (2) Defendants possessed the requisite scienter; and (3) Cbeyond investors relied on Defendants' alleged misstatements and omissions, and were damaged thereby.[4]

Predominance of common questions generally will be found where, as here, "a class of purchasers allegedly [has been] defrauded over a period of time by a similar common thread or scheme to which all alleged non-disclosures or misrepresentations relate"  *Garst*, 1999 U.S. Dist. LEXIS 22666, at *54 (citations omitted) (holding "[i]n

---

[4]   Indeed, the sole question of law or fact here that is not subject to "generalized proof" is the amount of each settlement class member's damages, which will be calculated using the Plan of Allocation approved by the Court.  Individual questions of damages, however, are obviously found in every securities class action and are no bar to class certification.  *See, e.g., In re VisaCheck /MasterMoney  Antitrust Litig.,* 280 F.3d 124, 136 (2d Cir. 2001); *In re Oxford Health Plans, Inc. Sec. Litig.,* 191 F.R.D. 369, 378 (S.D.N.Y. 2000).

this case, plaintiffs' allegations of a common scheme of deception are sufficient to demonstrate that common questions predominate"); *CV Reit, Inc. v. Levy*, 144 F.R.D. 690, 700 (S.D. Fla. 1992) (predominance satisfied where investors "defrauded by the same common course of conduct").

Moreover, whether any Settlement Class Member relied on Defendants' alleged misstatements and omissions does not raise individual issues in this case because reliance is presumed pursuant to (i) *Basic's* fraud on the market doctrine, and (ii) *Affiliated Ute's* presumption of reliance on material omissions, with either presumption sufficient to satisfy this element.

The fraud on the market doctrine, as enunciated by the Supreme Court in *Basic Inc. v. Levinson*, 485 U.S. 224 (1988), dispenses with the requirement that an investor prove awareness or reliance of a particular statement. *Id*. at 241-42; *see also In re Amerifirst Sec. Litig.*, 139 F.R.D. 423, 429 (S.D. Fla. 1991). In order to be entitled to the *Basic* presumption of reliance, the market for the security must be "efficient." *Basic*, 485 U.S. at 247. Here, there is sufficient evidence of market efficiency. Indeed, the Court can presume that Cbeyond's common stock traded in an efficient market because it is traded on the NASDAQ. *See, e.g., Teamsters Local 445 Freight Div. Pension Fund v. Bombadier, Inc.*, No. 05 CV 1898 (SAS), 2006 WL 2161887, at *8 (S.D.N.Y. Aug. 1, 2006) ("If, for example, a security is listed on the NYSE, AMEX, NASDAQ, or a similar national market, the market for that security is

30

presumed to be efficient.").[5]  Moreover, the market for Cbeyond common stock meets

the efficiency factors set forth in *Cammer v. Bloom*, 711 F. Supp. 1264 (D.N.J. 1989).[6]

### 2.     A Class Action Is Superior to Other Available Methods for the Fair and Efficient Adjudication of the Controversy

Finally, Rule 23(b)(3) also requires that the action be superior to other available

methods for the fair and efficient adjudication of the controversy.  This is self-evident

here.  Courts find that the superiority requirement is satisfied where:

> The potential class members are both significant in number and geographically dispersed.  The interest of the class as a whole in litigating the many common questions substantially outweighs any interest by individual members in bringing and prosecuting separate actions.

*Cromer Fin. Ltd. v. Berger*, 205 F.R.D. 113, 133 (S.D.N.Y. 2001).

Here, "[s]eparate actions by each of the class members would be repetitive,

wasteful, and an extraordinary burden on the courts."  *Kirkpatrick*, 827 F.2d at 725

---

[5]  Similarly, reliance is presumed to the extent that the claims are based on omissions of material facts.  *See Affiliated Ute Citizens v. United States*, 406 U.S. 128, 153-54 (1972) ("[P]ositive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of this decision.").

[6]  Cbeyond stock was listed and actively traded on the NASDAQ, an open and efficient market, with almost 30 million shares of common stock outstanding shortly after the end of the Class Period and with average trading volumes of approximately 530,000 shares. As a regulated issuer, Cbeyond regularly made public filings with the SEC.  It actively communicated with the market through established market communications mechanisms and was actively followed and reported on by major securities brokerages and analysts. (*See* Amended Complaint ¶ 23, 36, 120. (Dkt. #24.))

31

(citations omitted); *accord Morris v. Transouth Fin. Corp.*, 175 F.R.D. 694, 701 (M.D. Ala. 1997).

Further, certification of the Settlement Class is the superior method to facilitate the resolution of Settlement Class's claims against Defendants. Without the settlement class device, Defendants could not obtain a class-wide release, and therefore would have had little, if any, incentive to enter into the Settlement. Moreover, certification of a class for settlement purposes will allow the Settlement to be administered in an organized and efficient manner. *See In re Telik, Inc. Sec. Litig.*, No. 07 Civ. 4819 (CM), 2008 WL 4198516, at *12 (S.D.N.Y. Sept. 10, 2008). Resolution of Lead Plaintiffs' claims against Defendants through the proposed Settlement Class is plainly superior to any other available method of resolution.

For all of the foregoing reasons, this Court should find, for settlement purposes only, that the Settlement Class meets the requirements of both 23(a) and 23(b) and should certify the Settlement Class.

### D.    Lead Counsel Should Be Appointed Class Counsel Under Rule 23(g)

Rule 23(g)(1) of the Federal Rules states that "a court that certifies a class must appoint class counsel." Fed. R. Civ. P. 23(g)(1). Lead Plaintiffs respectfully request that Labaton Sucharow and Page Perry be appointed Class Counsel and Liaison Counsel, respectively, for the Settlement Class. As discussed above, these firms have been and will continue to fairly and adequately represent the class. Proposed counsel

are knowledgeable about the applicable law, extremely experienced in handling class actions, have performed substantial work in pursuing the Settlement Class's claims here and in reaching a settlement, and have committed the necessary resources to representing the Settlement Class.  *See* Fed. R. Civ. P. 23(g)(1)(A).

Labaton Sucharow is among the nation's preeminent law firms in this area of practice and has served as lead or co-lead counsel on behalf of major institutional investors in numerous class actions since the enactment of the PSLRA, including *In re American International Group, Inc. Sec. Litig.*, No. 04-8141 (S.D.N.Y.) (representing the Ohio Public Employees Retirement System, State Teachers Retirement System of Ohio, and Ohio Police & Fire Pension Fund); *In re Countrywide Sec. Litig.*, No. C 07-5295 (C.D. Cal.) (representing the State of New York and New York City Pension Funds); *In re HealthSouth Corp. Sec. Litig.*, No. CV-03-1501 (N.D. Ala.) (representing New Mexico State Investment Council, the New Mexico Educational Retirement Board and the State of Michigan Retirement System); and *In re Waste Management, Inc. Securities Litigation*, No. H-99-2183 (S.D. Tex.) (representing Connecticut Retirement Plans and Trust Funds.)  (*See* Goldman Decl., Ex. 4-A.)

Page Perry attorneys have over 200 years of combined litigation experience and collectively have tried over 300 bench and jury trials and arbitrations.  They represent institutional and individual investors in securities fraud class actions, shareholder class actions involving mergers and acquisitions and shareholder derivative litigations.

Some current and past cases of Page Perry attorneys include: *In re Oxford Health Plans*, MDL No. 1222 (S.D.N.Y.); *In re Scientific-Atlanta, Inc. Sec. Litig.*, No. 02-416-CC (N.D. Ga.); *In re Vivendi Universal, S.A., Inc. Sec. Litig.*, No. 02-5571 (S.D.N.Y.). (*See* Goldman Decl., Ex. 5-A.)

## IV.    THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION

Pursuant to the Preliminary Approval Order, and as explained in the Notice, all Settlement Class Members wishing to participate in the Settlement must file a valid Proof of Claim on or before January 11, 2010.  All Settlement Class Members who timely file valid Proof of Claim forms that show a recognized loss will receive a distribution from the net settlement proceeds, after deduction of fees and expenses approved by the Court, administrative expenses and taxes incurred on interest income earned by the Settlement Fund if their claim is equal to or greater than $10.00. (Goldman Decl. ¶ 55.)

The distribution will be made in accordance with the Plan of Allocation set forth and described in detail in the Notice.  *Id.*  The Plan of Allocation was developed with the assistance of the Lead Plaintiffs' consulting damages expert, who has considerable experience in developing plans of allocation for settlements in securities class actions.   As explained in the Notice, the Plan of Allocation apportions the recovery among Class Members who purchased or acquired Cbeyond's common stock at different points during the Class Period. (Goldman Decl. ¶¶ 55-56, Exhibit 2-A.)

The Plan of Allocation reflects the allegations that the prices of Cbeyond's common stock were artificially inflated due to the allegedly false and misleading statements made during the Class Period and before the various alleged disclosures of corrective information.  Accordingly, the Plan is based on estimates of the losses attributable to the alleged misstatements.  These losses, in turn, depend on the dates the stock was purchased, sold or held.  Class Members who made purchases before any allegedly corrective disclosure and sold after or held through the last disclosure date will recover the most.  *Id.*

A plan of allocation is governed by the same standard that applies to approval of the Settlement as a whole; it must be fair, adequate and reasonable.  *In re Chicken Antirust Litig. Am. Poultry*, 669 F.2d 228, 238 (5th Cir. 1982).  In addition, an allocation formula need only have a reasonable basis, particularly if recommended by experienced and competent counsel.  *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 462 (S.D.N.Y. 2004).  A reasonable plan may also consider the relative strength and values of different categories of claims.  *Id.; see also In re Gulf Oil/Cities Serv. Tender Offer Litig.*, 142 F.R.D. 588, 595-96 (S.D.N.Y. 1992) (plan of allocation that distributes greater part of settlement proceeds to those most injured is reasonable).  The Plan proposed here was specifically developed to ensure a fair distribution of available settlement proceeds and, to date, there have been no objections to it.  Lead

Plaintiffs and Lead Counsel respectfully submit that the Plan is fair and reasonable and should be approved by the Court.

## <u>CONCLUSION</u>

For the foregoing reasons, Lead Plaintiffs respectfully request that the Court: (1) enter the proposed Judgment approving the Settlement; (2) certify the Settlement Class and appoint the proposed class representatives and class counsel; and (3) enter the proposed Order Approving Plan of Allocation.

Dated:        December 29, 2009          Respectfully submitted,


/s/ David J. Worley
    DAVID J. WORLEY
    Georgia Bar No. 776665

    PAGE PERRY LLC
    1040 Crown Pointe Parkway
    Suite 1050
    Atlanta, GA 30338
    Tel: (770) 673-0047
    Fax: (770) 673-0120
    dworley@pageperry.com

    *Liaison Counsel for Lead Plaintiffs and the Class*

LABATON SUCHAROW LLP

Christopher Keller
Jonathan Gardner
Mark S. Goldman
David Goldsmith
140 Broadway
New York, New York 10005
Phone: (212) 907-0700
Fax: (212) 818-0477
ckeller@labaton.com
jgardner@labaton.com
dgoldsmith@labaton.com

*Lead Counsel for Lead Plaintiffs and the Class*